# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re JANA W. OLSON | Case No.: SACV 17-1697 DSF |
| | Bankruptcy No.: 8:15-12496 TA |
| PASSPORT MANAGEMENT, LLC, | |
|     Appellant, | Memorandum Opinion |
| v. | |
| RICHARD A. MARSHACK, Chapter 7 Trustee, | |
|     Appellee. | |

    This matter is before the Court on appeal of the Bankruptcy Court's approval of a settlement by the Chapter 7 Trustee, Appellee Richard A. Marshack (Trustee), on behalf of the bankruptcy estate. Appellant Passport Management, LLC, the primary creditor of the estate, contends (1) that the settlement could not alienate property of the estate in contravention of the normal bankruptcy priorities and (2) that even if the property was not "property of the estate," the Bankruptcy Court abused its discretion in approving the settlement.

## I. Facts and Procedural Background

The Court will briefly recite the most relevant facts from a rather protracted ordeal. Appellant has a 2014 money judgment against Debtor Jana W. Olson stemming from litigation filed in 2010 in California Superior Court. Within a month of being served with Appellant's lawsuit, Debtor transferred the beneficial interest in a self-settled Cook Islands trust from herself to her two pre-teen children for no consideration.[1] Eventually, Debtor filed her bankruptcy petition. Appellants are the primary creditor of Debtor's estate.[2] At some point, Debtor agreed to repatriate the Cook Islands trust money, and a stipulated order was entered by the Bankruptcy Court ordering Debtor to do so. The order requires repatriation, but explicitly does not decide whether the money is the property of the estate. REC 765. Debtor proceeded

---

[1] The Cook Islands are well-known for their "asset protection" amenities. See Leslie Wayne, Cook Islands, a Paradise of Untouchable Assets, New York Times, Dec. 14, 2013, available at https://www.nytimes.com/2013/12/15/business/international/paradise-of-untouchable-assets.html (accessed April 25, 2018). In the words of the Bankruptcy Court,

> I think somebody in Cook Islands probably decided that they weren't going to corner the world's market of coconuts. So what they would do instead is they would create what, as I've always understood it to be, a unique debtor's haven. Whereby, the laws are tilted so heavily in favor of debtors that no matter how righteous Passport's claim might be, and how seemingly powerful this building with its mahogany slabs and so forth and a gold eagle up there, how fearsome that might be they can simply go, "Come get it." And a lot of people seem to find that that protection is attractive. So much so, that they give them billions of dollars.

REC 190.

[2] There was some dispute over whether Appellant is a secured creditor, but that issue was resolved via compromise with the Trustee.

to disobey the Bankruptcy Court's order by sabotaging the repatriation effort with a letter designed to convince the Cook Island trustee that her request to repatriate the money was made under duress. The Bankruptcy Court then ordered Debtor jailed for civil contempt. Debtor remained in custody for more than a year.[3]

At this point, the Trustee apparently decided jail was not going to convince Debtor to bring the money out of the Cook Islands. The Trustee then began to work with Debtor's father, as guardian ad litem for the minor children, on an agreement to repatriate the money. Through negotiations – the exact nature of which are unclear from the record – Debtor's father and Debtor's brother, as trustee of a new California trust, signed an agreement with the Trustee to bring the money to California with approximately 80% going to the bankruptcy estate and 20% going to the California trust with the two minor children as beneficiaries.

After the money was repatriated, the Trustee moved for approval of the compromise before the Bankruptcy Court. Appellant opposed the motion claiming there was no authority to disburse property of the estate in contravention of the priority rules and that, in any event, there was no reason to allow Debtor effectively to be rewarded for her contempt. Appellant also believed that other pressure could have been brought to bear before a compromise was struck that allowed Debtor or her family to retain part of the funds. The Trustee's primary argument in support was that this was the only way the money was going to come back within the reach of the United States courts and 80% is better than nothing. The Trustee denied that the money was always property of the estate and contended that his agreement

---

[3] This is in addition to other periods of custody for contempt of both the Bankruptcy Court and the Superior Court.

3

with the Debtor's father and brother should be viewed as a compromise of the estate's prospective fraudulent transfer claim. And while the Trustee believed the fraudulent transfer claim would have been easily won, subsequent collection would have been virtually impossible.

The Bankruptcy Court granted the motion to approve compromise. Believing it could avoid the issue, the Bankruptcy Court declined to determine whether the Cook Islands trust funds were always property of the estate. Instead, it viewed the issue as one within its discretion regardless. In approving the settlement, the Bankruptcy Court expressed its dislike of effectively rewarding the Debtor or allowing her to get away with her contempt. However, it felt that it would be inequitable to reject the settlement and take the entirety of the money after the money had already been repatriated. For example, the Bankruptcy Court stated at oral argument:

> Now, if what you're trying to tell me is that, well, when dealing with frauds we can say, Ms. Olson, Mr. Weekes, Mr. Weekes, Jr., try to go through all these efforts and get a settlement and when it comes state-wise we'll do "King's X" – screw the settlement, we'll take all the money because you're bad guys to have done this in the first place, which is more or less as I read your pleading. I can't do that. I cannot do that because that means that that gold eagle is a vulture like all the rest.

REC 191-92. Later, it added:

> One alternative is to say, we got you – we got you to do what I had implored be done from the bench a dozen times. Which is to make a settlement to get that money back here so we can have an estate of some kind. To

> then have said that and say, "Got ya." That's an
> unpalatable alternative. It seems that the Court, at
> that point, is one of the pirates. And I won't do that. At
> the end of the day, I have the great advantage that this
> is not my money and it's your problem, not mine.

REC 206.

The Bankruptcy Court further found the compromise was in the best interest of the estate and its creditors because no money would have been returned if the deal had not been struck. This appeal followed.

## II. Analysis

### A. Prior to the Agreement, the Cook Islands Funds Were Not Property of the Estate

The opinion of the Bankruptcy Court notwithstanding, the parties agree that the Bankruptcy Court could not approve the agreement at issue without determining whether the Cook Islands money was always part of the bankruptcy estate. This Court concludes that it was not. There is no dispute that the money had been transferred, pre-petition, from the debtor to the Cook Islands trust. There is also no dispute that the debtor purported to transfer the beneficial ownership of the Cook Islands trust to her children pre-petition. In this context, the money in the trust was not the property of the bankruptcy estate at the time of the petition. While the facts present a very strong case for avoidance of the transfers, the transfers would still have to be formally avoided, an event that never took place. In fact, one of the stated points of the agreement at issue in this appeal was that it would spare the Trustee the time and expense of bringing a formal avoidance action. Without a judgment avoiding the transfers, the Cook Islands funds were not part of the estate at the time of the petition.

5

## B. The Bankruptcy Court Abused Its Discretion Because Its Decision Was Influenced by Legally Irrelevant Considerations

A bankruptcy court's approval of a trustee's compromise is reviewed for abuse of discretion. In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1065 (9th Cir. 2001). A bankruptcy court has abused its discretion only if the reviewing court has "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992) (citation omitted).

The Court finds that while the Bankruptcy Court's reasoning was reasonably sound based on its premises, it erred legally by considering factors that were not relevant or appropriate in approving the compromise.

Most significantly, the Bankruptcy Court clearly appeared to believe that it had some equitable duty to approve the compromise after the Debtor and her related parties had repatriated the money in reliance on the settlement. See REC 175, REC 191-193, REC 205-207. This was an error for a variety of reasons. First, and most fundamentally, by allowing itself to be bound to the expectations and reliance of the parties, the Bankruptcy Court effectively minimized its independent role in the process. The parties cannot be allowed to neutralize bankruptcy court review of a settlement merely by taking actions in reliance on the settlement. Second, neither the Bankruptcy Court nor the primary creditor were parties to the agreement or even privy to the settlement discussions. It was not the Bankruptcy Court that caused the money to be repatriated, so the Bankruptcy Court should have felt no obligation to satisfy any expectations that the settling parties may have privately had. Third, the settlement agreement explicitly anticipates the possibility that the

6

Bankruptcy Court might not approve the agreement. The Debtor and her related parties knowingly took the risk that the agreement would fall through after the money was repatriated. Finally, the Debtor and her related parties have done no equity here so it was erroneous for the Bankruptcy Court to go out of its way out of concern for providing equity to them. All concerned are well-aware of the Debtor's recalcitrance in this matter. Debtor has no legitimate right to hide assets in the Cook Islands and refuse to return them to the jurisdiction of the Bankruptcy Court when ordered to do so. It would be clearly inequitable to allow her to profit from her actions, so there is no reason for a court of equity to be worried about barring her from doing so.[4] Of course, this is not to say that ease of collection should not be a factor in approving or rejecting a settlement in this kind of matter, but that is a different analysis and only one consideration of many.

Nor does this Court believe that consideration of future incentives to other debtors should carry much, if any, weight in the decision to approve this particular settlement. The Bankruptcy Court seemed concerned that the Debtor and related parties would be somewhat "double-crossed" if the settlement were not approved. Inherent in this kind of reasoning is the need for cooperation in the future – i.e., would others repatriate money from difficult to reach places if they thought the bankruptcy court would nullify the agreement and take all of the money? This is a very minor consideration, at best, because of all of the other ways in which a court has to incentivize cooperation. The Court strongly suspects that only a very small percentage of debtors would be willing to sit in jail for a year, as the Debtor did, to keep money from their creditors. And she certainly could have sat

---

[4] As the Appellants note, a benefit to the Debtor's minor children is obviously an indirect benefit to the Debtor herself as the money set aside in trust is money that the Debtor does not have to pay for her children's welfare.

7

longer – and probably would have had it been this Court's prerogative.

The Court also sees no reason for concern for the minor beneficiaries of the Cook Islands trust. The Trustee seems to believe that they would be sued individually and saddled with non-dischargeable debt for their mother's sins. But the normal rule is that beneficiaries are not liable for the wrongful acts of the trust, and it is not apparent why that would not apply here. See Restatement (Third) of Trusts § 103. The Trustee's claim is against the trust – and its trustee(s) – not its innocent minor beneficiaries.

### III. Conclusion

The decision of the Bankruptcy Court is REVERSED and the matter is REMANDED for renewed consideration of the settlement agreement consistent with this opinion.

IT IS SO ORDERED.

Date: 4/30/18

Dale S. Fischer
United States District Judge